UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/13/16
```

Luis Zeledon, *individually and on behalf of all
other persons similarly situated*,

Plaintiff,

-against-

Dimi Gyro LLC, *d/b/a "Chirping Chicken"*, et al.,
*jointly and severally*,

Defendants.

15cv7301 (TPG) (DF)

**MEMORANDUM
AND ORDER**

**DEBRA FREEMAN, United States Magistrate Judge:**

## BACKGROUND

In this action, plaintiff Luis Zeledon ("Plaintiff") alleges that, while working as a

deliveryman, cleaner, and re-stocker at two "Chirping Chicken" restaurant locations, he was,

*inter alia*, not paid the applicable minimum wage and required overtime compensation, in

violation of the Fair Labor Standards Act ("FLSA") and New York state law.  Plaintiff proceeds

against Defendants Dimi Gyro LLC ("Dimi"), d/b/a "Chirping Chicken," DLS Chicken Corp.

("DLS"), d/b/a "Chirping Chicken," and Demetri Pappas ("Papas"),[1] jointly and severally.

Currently before this Court is a motion made pursuant to Section 216(b) of the FLSA, by

which Plaintiff seeks conditional certification of a collective of similarly situated DLS

employees and asks this Court to facilitate Court-authorized notice, so that the similarly situated

---

[1] Defendants state that "Demetri Pappas" is an incorrect spelling of the individual
defendant's name, which is properly spelled "Dimitrios Papas."  (Declaration of
Konstantine G. Paschalidis, dated May 2, 2016 ("Paschalidis Decl.") (Dkt. 31) ¶ 1.)  This
Court adopts the corrected spelling herein.

employees may opt into Plaintiff's collective action.  For the reasons that follow, Plaintiff's

motion is granted in part and denied in part.

### A.    Factual Background

In support of his motion for conditional certification, Plaintiff has submitted his own

affidavit.  (Affidavit of Plaintiff in Support of Motion to Conditionally Certify Collective Action,

sworn to Mar. 21, 2016 ("Zeledon Aff.") (Dkt. 28).)  Defendants' opposition is accompanied by

an attorney declaration (Paschalidis Decl. (*see* n.1, *supra*)), and the declaration of Plaintiff's

former manager Stelios Vourliotis ("Vourliotis") (Declaration of Stelios Vourliotis, dated

Apr. 29, 2016 ("Vourliotis Decl.") (Dkt. 31) (Ex. 1)).

### 1.    Relationships Among the Parties

According to the Complaint, Defendants Dimi, DLS, and Papas operate Chirping

Chicken restaurants located at 940 Columbus Avenue and 355 Amsterdam Avenue, New York,

New York.  (Complaint and Jury Demand, dated Sept. 16, 2015 ("Compl.") (Dkt. 1) ¶ 13.)

Plaintiff alleges that Defendants are associated, joint employers that share control and act in one

another's interests with respect to their employees and have common wage-and-hour policies and

practices.  (*Id.* ¶ 17.)  Plaintiff alleges that Papas was an owner, shareholder, officer, or manager

of both Dimi and DLS, actively participating in the Dimi and DLS businesses and acting directly

or indirectly in their interests.  (*Id.* ¶¶ 14-15.)  Plaintiff further alleges that Papas could establish

the wages and hours of Dimi and DLS employees.  (*Id.* ¶ 16.)  Plaintiff alleges that he worked for

Defendants from approximately November 2012 until July 2015, exclusive of approximately one

month.  (*Id.* ¶ 18; Zeledon Aff. ¶¶ 2-3.)

Defendants contend that they are less interrelated than Plaintiff portrays, denying that

Defendants are associated, joint employers with common wage-and-hour policies and practices.

## 2.   Plaintiff's Employment History

In his affidavit, Plaintiff states that he was employed by Defendants, at both of the two Chirping Chicken locations, as a deliveryman, cleaner, and re-stocker. (Zeledon Aff. ¶¶ 2, 4.) He asserts that, during his time with Defendants, he worked for approximately 70 to 86 hours each week. (*Id.* ¶ 5.) He further asserts that, from November 2012 until approximately December 2014, Defendants paid him approximately $260 per week, thereafter paying him $320 a week until he stopped working for Defendants in July 2015. (*Id.* ¶ 6.)

In response, Defendants again take issue with the breadth of Plaintiff's assertions. In addition to contending that DLS alone employed Plaintiff, Defendants assert that Plaintiff was employed either primarily or exclusively as a deliveryman. (*See* Vourliotis Decl. ¶ 6 ("delivery duties accounted for over 80%" of Plaintiff's hours); Answer ¶ 19 (denying that Plaintiff worked as a cleaner or re-stocker and asserting Plaintiff worked "only as a deliveryman").) Defendants deny that Plaintiff worked the weekly hours claimed or received the rates of pay alleged. (Answer ¶¶ 20-21.) Defendants state that Plaintiff delivered food to customers and customarily received tips for each delivery, and that Plaintiff "provided a weekly tip amount indicating that he made well over the minimum wage with the tip credit." (Vourliotis Decl. ¶¶ 5, 11.)

Plaintiff alleges that Defendants paid him partially by check and partially by cash until approximately March 2013, and exclusively in cash thereafter. (Zeledon Aff. ¶ 7.) Defendants contend that Plaintiff was initially paid by check (Vourliotis Decl. ¶ 10), but that, in April 2013, it was discovered that Plaintiff had submitted a false Social Security number with his employment application, and thus Defendants began paying Plaintiff in cash, as he "could no longer be paid by check associated with the false [S]ocial [S]ecurity number provided" (*id.* ¶¶ 8-11).

4

### 3.    Other Employees Who May Be Eligible
### To Participate in the Proposed Collective

Although Plaintiff's affidavit catalogs, in varying degrees of detail, several categories of

fellow employees (including deliverymen, cooks, waiters and waitresses, and a cashier), he

describes only persons employed by Defendants at the Chirping Chicken located on Amsterdam

Avenue. (Zeledon Aff. ¶¶ 10-13.)  The information he provides is as follows:

#### a.    Deliverymen

Plaintiff states that Defendants "employed approximately twenty deliverymen . . ., many

of whom did other work such as cleaning and restocking."  (*Id.* ¶ 10.)  Plaintiff divides these

deliverymen into two groups, by their hours, pay, and responsibilities.

One group consists of 12 deliverymen, who, Plaintiff contends, shared similar schedules

with him, working "approximately from 7:00 am until 7:00 pm per day six days per week."  (*Id.*)

Plaintiff states that these individuals received salaries of between $220 and $260 dollars per

week, and did not receive a separate overtime premium.  (*Id.*)  According to Plaintiff, each of

these individuals began his employment working solely as a deliveryman, but, over time, each

was "given additional duties such as restocking and cleaning," receiving an additional $20 per

week for performing those duties.  (*Id.*)  Plaintiff states that he learned of these workers' pay

rates because, upon receiving his wages, he – like the others in this group – signed "a piece of

paper that had everyone's wages on it."  (*Id.*)  Plaintiff further states that he spoke directly with

an individual in this group named Sevichito, who disclosed his $260 salary to Plaintiff in a

discussion about switching job responsibilities.  (*Id.*)  Another individual in the group, Gilbert,

5

also reportedly told Plaintiff in conversation that he received $260 per week. (*See id.*) Plaintiff

also identifies, by single names,[2] seven of the "other salaried deliverymen." (*Id.*)

Plaintiff provides limited information about the second group of deliverymen he

identifies, merely stating that "[t]he rest of the deliverymen were paid approximately $5.65 per

hour and rarely, if ever, worked above forty hours per week." (*Id.*)

### b.   Cooks

Plaintiff states that Defendants employed approximately seven or eight cooks, each of

whom allegedly worked six days per week. (*Id.* ¶ 11.) Plaintiff identifies seven cooks by their

first names or nicknames, and describes their approximate hours and wages, as follows:

- Alberto, who worked from 7:00 a.m. until 5:00 p.m., and received between $500 and $600 per week;

- "Jumbo," who also worked from 7:00 a.m. until 5:00 p.m., and received $700 per week;

- "Killer," who worked from 5:00 a.m. or 6:00 a.m. until 2:00 p.m. and received between $600 and $700 per week;

- Luna, who worked from 8:00 a.m. until 7:00 p.m. and received $700 weekly;

- Ivan, who worked from 10:00 a.m. or 11:00 a.m. until 9:00 p.m. or 10:00 p.m. and received $1200 weekly; and

- Padre and Habibi, each of whom worked from 11:00 a.m. or 12:00 p.m. until 10:00 p.m. and received between $600 and $700 weekly.

---

[2] It is not clear to this Court whether certain of the names that Plaintiff provides are the employees' given names, surnames, or nicknames.

(*Id.*) Plaintiff states that he shared a similar schedule with these workers and that he personally observed their hours, witnessed their pay information when everyone "line[d] up at the cashier to get [thei]r weekly wages," and overheard them discuss their wages. (*Id.*)

### c.   **Waiters and Waitresses**

Plaintiff states that approximately three or four waiters and waitresses were also employed by Defendants, two of whom he identifies as Calimba and Jessica. (*Id.* ¶ 12.) According to Plaintiff, these individuals worked "approximately under forty hours each week." (*Id.*) Plaintiff provides no information, however, about the wages of the waitstaff or how they were paid.

### d.   **Cashier**

Plaintiff states that Defendants employed one cashier (*id.* ¶ 13), but provides no information regarding that employee's hours or wages.

### 4.   **Defendants' Pleaded Responses to Plaintiff's Allegations That They Failed To Pay Employees in Accordance with Law**

Plaintiff asserts that Defendants willfully failed to pay him and putative party plaintiffs the applicable minimum wage and required overtime compensation. (Compl. ¶¶ 23-24, 36-37.) Defendants, by their Answer, provide inconsistent responses regarding payment of minimum wage. (*Compare* Answer ¶ 23 (denying that Defendants "willfully failed to pay the [P]laintiff and party plaintiffs the applicable minimum wage"), *with id.* ¶ 36 (admitting that "[D]efendants in many workweeks willfully and repeatedly violated the Fair Labor Standards Act, . . . by failing to pay the [P]laintiff and party plaintiffs the [applicable] minimum wage").) Defendants consistently deny, though, that they willfully failed to pay overtime compensation to Plaintiff and putative party plaintiffs. *(Id.* ¶¶ 24, 37.)

7

## B.     Procedural History

Plaintiff filed this action on behalf of himself and others similarly situated on

September 16, 2015. (Dkt. 1.) In the Complaint, Plaintiff asserts an FLSA claim against

Defendants, on behalf of himself and, putatively, all similarly situated persons employed by the

Defendants at any time between September 16, 2012 (three years prior to the date the Complaint

was filed) and the entry of judgment in this action. (*Id.* ¶ 11.) Plaintiff also brings individual

New York state wage-and-hour law claims. (*See id.* ¶¶ 43-60.) Defendants answered the

Complaint on December 21, 2015. (Dkt. 23.)

On September 23, 2015, the Honorable Thomas P. Griesa, U.S.D.J., referred this action

to this Court for general pre-trial supervision. (Dkt. 11.) On March 31, 2016, Plaintiff filed his

motion for conditional certification of an FLSA collective action and Court-authorized notice.

(Dkt. 27.) Defendants opposed Plaintiff's motion on May 2, 2016 (Dkt. 30), and Plaintiff

submitted a reply on May 16, 2016 (Dkt. 32). Although the parties participated in a settlement

conference with this Court on June 29, 2016, the conference did not result in a resolution of the

action (*see* Dkt. 35), and the parties have requested that the Court proceed to consider Plaintiff's

motion for conditional certification.

### DISCUSSION

## I.     APPLICABLE LEGAL STANDARDS

### A.     The FLSA

"The FLSA was designed 'to correct and as rapidly as practicable to eliminate' the

practice of employers failing to pay its employees proper wages." *Armenta v. Dirty Bird Grp.,*

*LLC*, No. 13cv4603 (WHP), 2014 WL 3344287, at *1 (S.D.N.Y. June 27, 2014) (quoting

29 U.S.C. § 202(b)). Indeed, "[u]nder the FLSA, Congress prescribes a minimum wage to foster

the 'minimum standard of living necessary for health, efficiency, and general well-being of

8

workers,'" and employers may be found liable if they fail to pay their employees in accordance with the federal minimum wage. *Id.* (quoting 29 U.S.C. § 202(a)). The FLSA also "requires employers to pay overtime for employment 'in excess of [40 hours per week] . . . at a rate not less than one and one-half times the regular rate at which [the employee] is employed.'" *Benitez v. Demco of Riverdale, LLC*, No. 14cv7074 (CM), 2015 WL 3780019, at *2 (S.D.N.Y. June 15, 2015) (alterations in original) (quoting 29 U.S.C. § 207(a)(1)).

### B.   Section 216(b) of the FLSA

Section 216(b) of the FLSA allows employees to "recover unpaid minimum wages and/or overtime compensation from an employer who violates the [FLSA's] provisions, and permits such an action to be brought as a collective action." *Summa v. Hofstra Univ.*, 715 F. Supp. 2d 378, 384 (E.D.N.Y. 2010). Pursuant to Section 216(b):

> An action . . . may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b); *see also Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317, 320 (S.D.N.Y. 2007) (noting that employees can maintain a collective action against an employer where the employees are (1) "similarly situated" and (2) give their consent to become a party in writing).

There are three "essential features" of an FLSA collective action under Section 216(b). *Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 367 (S.D.N.Y. 2007).

> First, in order to participate in a collective action, an employee must "opt-in," meaning the employee must consent in writing to join the suit and that consent must be filed with the court. Second, the statute of limitations runs on each employee's claim until his individual Consent Form is filed with the court. Third, to better serve the FLSA's "broad remedial purpose," courts may order

9

> notice to other potential similarly situated employees to inform
> them of the opportunity to opt-in the case.

*Id.* (quoting *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 173 (1989)). Thus, "[a]lthough

Section 216(b) does not explicitly address court-authorized notice, 'it is 'well settled' that district

courts have the power to authorize an FLSA plaintiff to send such notice to other potential

plaintiffs.'" *Grant v. Warner Music Grp. Corp.*, No. 13cv4449 (PGG), 2014 WL 1918602, at *2

(S.D.N.Y. May 13, 2014) (quoting *Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d

101, 104 (S.D.N.Y. 2003)) (additional citations omitted). As the statute of limitations does not

toll for opt-in plaintiffs until they consent to appear, *see Lynch*, 491 F. Supp. 2d at 371, courts

will, following a finding that the named plaintiff is similarly situated to the potential collective

members, "routinely approve court-authorized notice in order to ensure that the rights of

potential claimants do not expire during the discovery process." *Grant*, 2014 WL 1918602,

at *2; *see also Khamsiri v. George & Frank's Japanese Noodle Rest. Inc.*, No. 12cv265 (PAE),

2012 WL 1981507, at *2 (S.D.N.Y. June 1, 2012) ("[C]ourt-authorized notice is appropriate[ ] to

prevent erosion of claims due to the running statute of limitations . . . .").

## C.   Conditional Certification

"Courts generally determine the appropriateness of class certification at two stages: first,

on the initial motion for conditional class certification, and second, after discovery." *Fasanelli*,

516 F. Supp. 2d at 321 (collecting cases). Thus, on the initial, pre-discovery motion (such as the

motion currently before this Court), a court determines whether potential opt-in plaintiffs are

similarly situated based on the pleadings and affidavits submitted to the court. *Id.*; *see also In re*

*Penthouse Executive Club Comp. Litig.*, No. 10cv01145 (NRB), 2010 WL 4340255, at *3

(S.D.N.Y. Oct. 27, 2010). If the court is satisfied that the "similarly situated" standard has been

met, it will authorize that notice be sent to potential opt-in plaintiffs. *Fasanelli*, 516 F. Supp. 2d

at 321.  After discovery is complete, the court will evaluate the full record before it to determine whether the opt-in plaintiffs are, in fact, similarly situated.  *Id.*  "If they are not, the class can be decertified at that time and the claims of dissimilar 'opt-in' plaintiffs dismissed without prejudice."  *Id.*

In light of the two-step process, "[t]he burden imposed at [the] first 'conditional certification' stage is minimal."  *Amador v. Morgan Stanley & Co.*, No. 11cv4326 (RJS), 2013 WL 494020, at \*4 (S.D.N.Y. Feb. 7, 2013) (internal quotation marks and citation omitted; second alteration in original).  As discussed further below, the burden at this stage is "low" because "the purpose of this first stage is merely to determine *whether* similarly situated plaintiffs do in fact exist."  *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010) (citations omitted; emphasis in original).  It is not until the second stage, upon a "full review of the factual record developed during discovery," that the court determines "whether opt-in plaintiffs are *actually* 'similarly situated.'"  *Amador*, 2013 WL 494020, at \*4 (internal quotation marks and citation omitted; emphasis in original).  At bottom, while conditional certification is not automatic, and while a plaintiff's showing in support of certification cannot be entirely conclusory, *see, e.g.*, *Morales v. Plantworks, Inc.*, No. 05cv2349 (DC), 2006 WL 278154, at \*2-3 (S.D.N.Y. Feb. 2, 2006), courts have recognized that the standard at this first stage is "'fairly lenient,' [and thus] courts applying it 'typically grant[ ] conditional certification,'" *Amador*, 2013 WL 494020, at \*3 (quoting *Malloy v. Richard Fleischman & Assocs. Inc.*, No. 09cv332 (CM), 2009 WL 1585979, at \*2 (S.D.N.Y. June 3, 2009)).

### 1. **"Similarly Situated"**

"Neither the FLSA nor its implementing regulations define 'similarly situated.'"  *Summa*, 715 F. Supp. 2d at 385 (citing *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y.

11

1997)). Courts in this Circuit have held that a named plaintiff can meet his or her burden "by making a modest factual showing sufficient to demonstrate that [the named plaintiff] and potential plaintiffs together were victims of a common policy or plan that violated the law." *Id.* (quoting *Hoffman*, 982 F. Supp. at 261); *accord Myers*, 624 F.3d at 554-55. Indeed, the relevant question "is not whether [p]laintiff[] and [potential opt-in members are] identical in all respects, but rather whether they were subjected to a common policy." *Raniere v. Citigroup Inc.*, 827 F. Supp. 2d 294, 323 (S.D.N.Y. 2011), *rev'd on other grounds*, 533 F. App'x 11 (2d Cir. 2013) (internal quotation marks and citation omitted). The fact that a potential class may involve employees in "a variety of diverse positions . . . does not undermine the conditional certification of the class since 'under [S]ection 216(b) parties may be similarly situated, despite not occupying the same positions or performing the same job functions and in the same locations, provided that they are subject to a common unlawful policy or practice.'" *Summa*, 715 F. Supp. 2d at 390 (quoting *Colozzi v. St. Joseph's Hosp. Health Ctr.*, 595 F. Supp. 2d 200, 207 (N.D.N.Y. 2009)); *see also Lynch*, 491 F. Supp. 2d at 369 (noting that "any factual variances that may exist between the plaintiff and the putative class do not defeat conditional class certification" because the court may later, after having the benefit of full discovery, "decertify the class or divide it into subclasses, if appropriate" (internal quotation marks and citations omitted)).

Further, at this initial procedural stage, "the Court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." *Summa*, 715 F. Supp. 2d at 385 (internal quotation marks and citation omitted); *see also Lynch*, 491 F. Supp. 2d at 368 ("Indeed, a court should not weigh the merits of the underlying claims in determining whether potential opt-in plaintiffs may be similarly situated." (citations omitted));

12

*Bijoux v. Amerigroup N.Y., LLC*, No. 14cv3891 (RJD) (VVP), 2015 WL 4505835, at *3

(E.D.N.Y. July 23, 2015), *report and recommendation adopted*, 2015 WL 5444944 (E.D.N.Y.

Sept. 15, 2015) (At this stage "the court's task is only to conclude whether there *may be* other

similarly situated workers, and [the court] need not evaluate the underlying merits of a plaintiff's

claims" (internal quotation marks and citations omitted; emphasis in original)).  Additionally, as

"the initial class certification determination [is] made . . . on preliminary documents such as

pleadings and affidavits," the determination is "necessarily [based on] unproven allegations."

*Fasanelli*, 516 F. Supp. 2d at 321-22 (rejecting defendant's arguments that declarations provided

by plaintiff should not be relied upon because they contained "inadmissible hearsay, speculation,

personal beliefs and conclusions," and granting conditional certification).

 Even so, to meet his or her burden on a motion for conditional certification, a plaintiff

must at least make a facially adequate showing that putative members of the collective are

similarly situated "with respect to the FLSA violations [the named plaintiff] allege[s] – not other

factors." *Bijoux*, 2015 WL 4505835, at *3 (citations omitted).  Thus, allegations of the mere

existence of standardized policies and procedures are not sufficient to establish that putative

plaintiffs are similarly situated to named plaintiffs, without at least some showing that the

putative plaintiffs are similarly situated with respect to a standardized policy that *violates* the

FLSA.  *Id.* (noting that the law looks to "whether the plaintiffs are similarly situated with respect

to their allegations that the law has been violated" (internal quotation marks and citations

omitted)).

### 2. Notice

 Once a court determines that a named plaintiff has met his or her burden for initial

certification of a collective, the court may grant court-authorized notice informing potential

additional plaintiffs of their opportunity to opt into the lawsuit. *Lynch*, 491 F. Supp. 2d at 367.

The Supreme Court has held that:

> court-supervised notice is the preferred method for managing the
> notification process for several reasons: it avoids "multiplicity of
> duplicative suits;" it allows the court to set deadlines to advance
> the disposition of an action; it furthers the "wisdom and necessity
> for early judicial intervention" in multi-party actions; and it
> protects plaintiffs' claims from expiring under the statute of
> limitations.

*Id.* (quoting *Hoffmann-La Roche*, 493 U.S. at 171-72).

"[T]he form and content of the notice . . . is to be approved by the [c]ourt prior to

mailing," in order to prevent "after-the-fact disputes between counsel" regarding the form and

manner of the notice and the opt-in plaintiffs' consent form. *Krueger v. New York Tel. Co.*, No.

93cv0178 (LMM), 1993 WL 276058, at *3 (S.D.N.Y. July 21, 1993) (citing *Hoffmann-La

Roche*, 493 U.S. at 170). The content of the notice is left to the broad discretion of the district

court, *see Fasanelli*, 516 F. Supp. 2d at 323 (citing *Hoffmann-La Roche*, 493 U.S. at 170 and

stating that "[t]he Supreme Court has abstained from reviewing the contents of a proposed notice

under § 216(b), noting that such 'details' should be left to the broad discretion of the trial

court"), and "neither the FLSA nor the courts 'have specifically outlined what form court-

authorized notice should take,'" *Amador*, 2013 WL 494020, at *9 (quoting *Fasanelli*, 516 F.

Supp. 2d at 323). When exercising discretion, courts in this District consider the overarching

policies of the notice provisions of Section 216(b), such as achieving judicial efficiency and

lowering individual costs for plaintiffs. *Fasanelli*, 516 F. Supp. 2d at 323. "[T]hese benefits

'depend on employees receiving accurate and timely notice concerning the pendency of the

collective action, so that they can make informed decisions about whether to participate.'" *Id.*

(quoting *Hoffmann-La Roche*, 493 U.S. at 170).

14

### D.     Statute of Limitations Under the FLSA

"The statute of limitations under the FLSA is ordinarily two years, but it may be extended to three years if the claim arises from a 'willful' violation." *Yu G. Ke v. Saigon Grill, Inc.*, 595 F. Supp. 2d 240, 258 (S.D.N.Y. 2008) (citing 29 U.S.C. § 255(a)).  To satisfy the willfulness requirement, a plaintiff must demonstrate that the employer either acted knowingly or "'showed reckless disregard for the matter of whether its conduct was prohibited by the statute.'" *Id.* (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)).

## II.     CONDITIONAL CERTIFICATION OF THE PROPOSED COLLECTIVE

### A.     FLSA Coverage

As a threshold matter, Defendants argue in this case that Plaintiff has failed to allege adequately that he is a covered employee under the FLSA.  (Memorandum of Law in Opposition to Plaintiffs' Motion for Conditional Collective Certification, dated May 2, 2016 ("Def. Mem.") (Dkt. 30), at 8.)  The FLSA's minimum wage and overtime provisions reach "only to employees (1) who are *personally* 'engaged in [interstate] commerce or in the production of goods for [interstate] commerce' (so-called 'individual coverage'), or (2) who are 'employed in an *enterprise* engaged in [interstate] commerce or in the production of goods for [interstate] commerce' (so-called 'enterprise coverage')." *Shim v. Millennium Grp.*, No. 08cv4022 (FB) (VVP), 2009 WL 211367, at *2 (S.D.N.Y. Jan. 28, 2009) (quoting 29 U.S.C. §§ 206(a), 207(a)) (alterations and emphasis in original).  According to Defendants, Plaintiff has not sufficiently alleged either type of coverage.

Defendants, however, have not moved to dismiss Plaintiff's FLSA claim as facially deficient, and Plaintiff aptly points out that not only does his Complaint expressly plead "enterprise" coverage (*see* Reply Memorandum of Law in Support of Motion to Conditionally

15

Certify Collective Action, dated May 16, 2016 ("Pl. Reply Mem.") (Dkt. 32), at 9 (citing Compl.

¶¶ 33-35)), but that, in considering a plaintiff's motion for conditional certification of a

collective action, a "court does not . . . decide substantive issues going to the ultimate merits"

(*id.* (quoting *Lynch*, 491 F. Supp. 2d at 368)).  Plaintiff further notes that Defendants have cited

no precedent in which, in the context of a preliminary certification motion, courts have addressed

the adequacy of a complaint's allegations of FLSA coverage (*see id.*), and this Court has

identified no persuasive authority supporting such an approach.[3]

Essentially, this Court agrees with Plaintiff that, regardless of whether Plaintiff has

sufficiently pleaded – or can eventually prove – that he is entitled to the protections afforded by

the FLSA, that issue need not be resolved at this time.  Indeed, on this motion, it would be

inappropriate for the Court to address any general question of FLSA coverage, as the relevant

inquiry here focuses "not on whether there has been an actual violation of law[,] but rather on

whether the proposed plaintiffs are 'similarly situated' . . . with respect to their allegations that

the law has been violated." *Young v. Cooper Cameron Corp.*, 229 F.R.D. 50, 54 (S.D.N.Y.

2005) (citation omitted); *see also Hoffmann*, 982 F. Supp. at 262 ("[T]he Court need not evaluate

the merits of plaintiffs' claims in order to determine that a definable group of 'similarly situated'

plaintiffs can exist here." (citation omitted)).  While it may be appropriate for a court to consider

issues of FLSA coverage where it is suggested that putative members of a proposed collective

would be *differently situated* from the named plaintiff in that regard, this Court notes that

Defendants have made no such suggestion here.

---

[3] The primary authority for reaching the merits at this stage, *Amendola v. Bristol-Myers Squibb Co.*, 558 F. Supp. 2d 459 (S.D.N.Y. 2008), has been "soundly rejected within this circuit, . . . and is highly questionable after the Second Circuit's decision in *Myers.*" *Stevens v. HMSHost Corp.*, No. 10cv3571 (ILG) (VVP), 2012 WL 4801784, at *2 n.5 (E.D.N.Y. Oct. 10, 2012) (citation omitted).

Accordingly, this Court will proceed to focus on the key question of whether Plaintiff has satisfied his modest burden of showing that he and the putative members of the proposed collective are "similarly situated" with respect to one or more alleged FLSA violations.

**B.     Scope of the Proposed Collective**

In his Complaint, Plaintiff describes this action as having been commenced, as to Plaintiff's FLSA claims, "as a collective action in behalf of all similarly situated current and former employees of the [D]efendants at any time since three years before the date of this complaint to the entry of judgment in this action who consent to become party plaintiffs." (Compl. ¶ 11.) In other words, the proposed collective, as set out in the Complaint, would potentially include individuals who worked for *any* of the named Defendants, for the period from September 16, 2012 (three years before the Complaint was filed) to the date of final judgment in this action.

As noted above, however, Defendants take issue with Plaintiff's suggestion that he ever worked for defendant Dimi, asserting that Plaintiff was only employed by defendant DLS, at DLS's particular Chirping Chicken location on Amsterdam Avenue. (*See* Background, *supra*, at Section (A)(1); *see also* Def. Mem., at 3, 7-8 (arguing that any collective should not include employees of Dimi).) Although, as previously mentioned, Plaintiff contends that, prior to the opening of the Columbus Avenue restaurant (which Defendants state is operated by Dimi), he also briefly worked at that location, Plaintiff does not press this point in his certification motion. In fact, Plaintiff appears, at least implicitly, to drop any request for an FLSA collective that would include employees at that second location. In this regard, even while citing to a portion of the Complaint that alleges FLSA violations by *all* Defendants (*see* Memorandum of Law in Support of Motion to Conditionally Certify Collective Action, dated Mar. 31, 2016 ("Pl. Mem.")

17

(Dkt. 29), at 4 (citing Compl. ¶ 1)), Plaintiff's motion papers only describe this action as "alleg[ing] that *DLS Chicken Corp.* violated the Fair Labor Standards Act" (*id.* (emphasis added)).  Further, by his motion, Plaintiff expressly seeks an order conditionally certifying a collective action "on behalf of all employees of DLS Chicken Corp." (*id.*), and, in his affidavit, only describes employees working at the Amsterdam Avenue location (*see* Zeledon Aff. ¶¶ 10-13).

Given Plaintiff's presentation on his motion, this Court finds that the fair import of his papers is that he is now seeking the conditional certification of a collective that is limited in scope to employees who, during the relevant period, worked for DLS, at the Amsterdam Avenue Chirping Chicken restaurant.  Thus, this Court will only consider whether Plaintiff has adequately shown that he was similarly situated to the described categories of such other DLS employees.[4]

C.      **Whether Plaintiffs and Members of the**
        **Proposed Collective are Similarly Situated**

Defendants make numerous arguments as to why, in their view, Plaintiff has not demonstrated that he and members of the proposed collective are similarly situated.  Those arguments are partially, but not entirely, persuasive.

As a general matter, Defendants argue that Plaintiff's own submissions demonstrate "that there was no common policy of not paying [P]laintiff or any of the other delivery persons" the applicable minimum wage, and further show that Defendants "in fact, did not have a policy of

---

[4] This Court notes that Plaintiff has not only omitted defendant Dimi from his current proposed definition of an FLSA collective, but that he has also omitted any reference to defendant Papas.  While it is possible that Papas, as alleged in the Complaint, could be considered the "employer" of workers at both of the Chirping Chicken restaurants identified in the Complaint, this Court need not address this possibility here, given the limited scope of the collective proposed by Plaintiff in his motion.

failing to pay its delivery staff overtime wages." (Def. Mem., at 8, 10 (emphasis in original).)
On this point, Defendants principally contend that, because Plaintiff describes one group of
deliverymen as having been paid on a salary basis and working over 40 hours a week, while he
describes a second group of deliverymen as having been paid a $5.65 hourly wage and rarely
working above 40 hours a week (Zeledon Aff. ¶ 10), Plaintiff has not demonstrated the existence
of an unlawful scheme common to all deliverymen. (Def. Mem., at 9.) Defendants do not
directly address whether the cooks, waiters and waitresses, and cashier also described by
Plaintiff were subject to a common, allegedly unlawful policy.

Plaintiff concedes that his submissions do not demonstrate that all employees were paid
below minimum wage and denied overtime compensation. Rather, Plaintiff submits that
"[D]efendants failed to properly pay the minimum wage, overtime, or both, to their employees."
(Pl. Reply Mem., at 8.) Plaintiff asserts that a showing of "[a] common policy or scheme does
not require that every of the defendants' employees therefore have a claim, it only requires that
*those that do* be similarly situated." (Pl. Reply Mem., at 8 (citing *Sanchez v. Gansevoort Mgmt.
Grp.*, No. 12cv75, 2013 U.S. Dist. LEXIS 9739, at *5 (S.D.N.Y. Jan. 10, 2013)) (emphasis in
original).)

### 1.  **Salaried Deliverymen**

The Court concludes that, with respect to the deliverymen who, like Plaintiff, were
allegedly paid fixed weekly salaries (Zeledon Aff. ¶ 10),[5] Plaintiff has met his "light burden of
making a 'modest factual showing'" that he "and the potential opt-in plaintiffs 'together were

---

[5] While Plaintiff states in his reply briefing that "[D]efendants have produced documents
in discovery that *purport* to show the [P]laintiff was paid at various times hourly and by salary,
without effect on his deprivation of overtime wages" (Pl. Reply Mem., at 8 (emphasis added)),
Plaintiff does not appear to be claiming that he, in fact, received wages other than at a fixed
weekly rate.

victims of a common policy or plan that violated the law,'" *Sanchez v. Gansevoort Mgmt. Grp*, 2013 U.S. Dist. LEXIS 9739, at *3 (quoting *Myers*, 624 F.3d at 555). Plaintiff, from his own knowledge, identifies 12 such deliverymen, nine by name, each of whom worked over 40 hours per week for fixed salaries, apparently – based on Plaintiff's statements – below the minimum wage, and without a separate overtime premium.[6] (Zeledon Aff. ¶ 10.) Plaintiff asserts, in his affidavit, that he was familiar with the hours worked by these individuals, as he worked a similar schedule, and that he learned of their wages through signing a document "that had everyone's wages written on it," as well as through conversations with two such deliverymen. (*Id.*) This type of submission has generally been found sufficient to support conditional certification of a collective. *See, e.g.*, *Anglada v. Linens 'N Things, Inc.*, No. 06cv12901 (CM) (LMS), 2007 WL 1552511, at *5 (S.D.N.Y. Apr. 26, 2007) (showing of "similarly situated employees, a common plan or policy of not paying overtime to [such] employees, and the specific number of potential employees who may wish to join this suit" sufficient); *Gjurovich*, 282 F. Supp. 2d at 104 (collective certification appropriate where plaintiff identified "a number of current or former meat department employees . . . who, like the Plaintiff, were paid a fixed weekly salary, and may not have received overtime compensation if he or she worked in excess of forty hours").

Throughout their opposition papers, Defendants broadly attack Plaintiff's reliance on his own affidavit and his use of hearsay. (Def. Mem., at 3-4, 10, 12.) Based on the legal standards applicable to this motion, these arguments are unavailing. *See Mata v. Foodbridge LLC*, No.

---

[6] Plaintiff allegedly worked between 70 and 86 hours per week and received up to $320 in compensation. (*Id.* ¶¶ 5-6.) For the period in question, the minimum compensation permitted for those hours, including overtime, would have ranged from $616.25 to $790.25. *See* 29 U.S.C. § 206(a)(1)(C). If Plaintiff's allegations are true, then the compensation allegedly paid to fellow salaried deliverymen similarly would have fallen below the minimum-wage and overtime requirements.

14cv8754 (ER), 2015 WL 3457293, at *3 (S.D.N.Y. 2015) ("Defendants are wrong to suggest that Plaintiff [i]s required to buttress his motion with affidavits besides his own or with other documentary evidence." (collecting cases granting certification based upon one affidavit)); *Fasanelli*, 516 F. Supp. 2d at 321-22 (finding that a plaintiff may make the required showing on the basis of hearsay). Defendants also cannot defeat Plaintiff's motion by attacking Plaintiff's credibility. (*See* Def. Mem., at 10 (challenging Plaintiff's reported conversations with other deliverymen as "unsubstantiated" and, in at least one instance, as "not credible").) As noted above, on a motion for conditional certification, this Court will not "make credibility determinations." *Summa*, 715 F. Supp. 2d at 385 (internal quotation marks and citation omitted).

While the details offered by Plaintiff to show his personal knowledge of the other salaried deliverymen's wages and hours are somewhat meager, this Court finds his proffer regarding their common exposure to an allegedly unlawful compensation policy to be sufficient to meet the low threshold necessary for conditional certification.[7]  Moreover, certification should not be denied at

---

[7] *Sanchez v. JMP Ventures, L.L.C.*, No. 13cv7264 (KBF), 2014 WL 465542 (S.D.N.Y. Jan. 27, 2014), upon which Defendants rely (*see* Def. Mem., at 12-13), is not to the contrary.  In that case, the court found that the plaintiff's repeated, generalized references to his "observations" and "conversations" with other employees were insufficient to support his allegations of an unlawful "common practice" by the defendants. *Sanchez v. JMP Ventures,* 2014 WL 465542, at *2.  There, though, the court was faced with a situation where the assertions offered by the plaintiff in support of conditional certification were wholly conclusory, as the plaintiff had failed to provide "*any* detail as to a *single* such observation or conversation." *Id.* (emphasis in original).  Here, Plaintiff has attested, by affidavit, that he shared common schedules with other deliverymen and witnessed when they worked, that he observed a particular document that showed their wages, and that he engaged in at least two specific conversations with other employees in which they confirmed their weekly compensation. (Zeledon Aff. ¶ 10.)  Moreover, the plaintiff in *Sanchez v. JMP Ventures* had only worked for a short portion of the three-year period he sought for the collective, limiting the value of his "personal observations" of the circumstances of other employees. *Sanchez v. JMP Ventures,* 2014 WL 465542, at n.1.  In this case, in contrast, Plaintiff worked for nearly the entire period that would be covered by the proposed collective. (*See* Zeledon Aff. ¶ 3.)

21

this time based on Defendants' additional assertions that factually distinct issues will affect the resolution of the potential claims of these deliverymen.

The factual distinctions that Defendants suggest – that the deliverymen were not all paid the same weekly salary; that they worked different amounts of overtime; and that, unlike the others, Plaintiff was eventually paid in cash, rather than by check (*see* Def. Mem., at 9-10) – are all fairly minor. Certainly, the fact that Plaintiff and fellow salaried deliverymen may have been paid salaries that ranged from $220 to $320 per week is not a sufficient reason to deny certification. *See Sanchez v. La Cocina Mexicana, Inc.*, No. 09cv9072 (SAS), 2010 WL 2653303, at *1 (S.D.N.Y. July 1, 2010) ("[E]ven though 'there may be some differences in the calculation of damages (should plaintiffs prevail), those differences are not sufficient to preclude joining the claims in one action.'") (quoting *Brzychnalski v. Unesco, Inc.*, 35 F. Supp. 2d 351, 353 (S.D.N.Y. 1999)). Likewise, mere differences in the particular amounts of time worked over 40 hours per week present no bar to conditional certification. *See, e.g.*, *Hernandez v. Immortal Rise, Inc.*, No. 11cv4360 (RRM) (LB), 2012 WL 4369746, at *3 (E.D.N.Y. Sept. 24, 2012) (conditionally certifying collective on showing that plaintiffs and other employees "consistently worked more than forty hours a week"); *Realite v. Ark Restaurants Corp.*, 7 F. Supp. 2d 303, 307 (S.D.N.Y. 1998) (same). Finally, Defendants cite no authority for the proposition that Plaintiff should no longer be considered similarly situated to other workers when, due to an issue with his Social Security number, his employer stopped paying him by check; this Court cannot conceive of letting such an issue deprive employees of the ability to proceed with a collective action.

At this stage, this Court is satisfied that none of the issues raised by Defendants should prevent this action from proceeding as an FLSA collective action, with respect to the group of deliverymen who are alleged by Plaintiff to have been paid weekly salaries, and who worked for

DLS, at the Amsterdam Avenue restaurant, during the relevant period.  *See Lynch*, 491 F. Supp.

2d at 369 ("For the moment, the factual variations defendants rely on do not undercut plaintiffs'

allegations of common wage and overtime practices that violate the FLSA." (internal quotation

marks and citation omitted)).  Given Plaintiff's allegations of willful violation of the FLSA wage

and overtime provisions, the Court finds that the relevant period for this collective should be

from September 16, 2012 (*i.e.*, three years prior to the filing of this action) to the date of final

judgment in the action.[8]

### 2.   Other Categories of Employees

Although "Plaintiff could, theoretically, make the 'modest factual showing' required at

this stage of the proceeding with only the allegations contained in his Complaint and personal

affidavit," *Mata*, 2015 WL 3457293, at *3, the Court concludes that Plaintiff has not done so

with respect to the second group of deliverymen he has described (those who were allegedly paid

$5.65 per hour wage and generally did not work overtime), or with respect to the other workers

he has referenced – *i.e.*, the cooks, waitstaff, and cashier.  Courts will conditionally certify

collectives of individuals with various occupations, hours, and pay rates where a *common*

*unlawful policy* is shown.  *See Cano v. Four M Food Corp.*, No. 08cv3005 (JFB) (AKT), 2009

WL 5710143, at *9 (S.D.N.Y. 2009) ("Even though plaintiffs are certainly not required to show

that they are identically situated, or that they possess the same attributes with respect to their job,

---

[8] Although the FLSA statute of limitations generally does not toll for putative plaintiffs until they opt in to this action, *see Lynch*, 491 F. Supp. 2d at 371, "because equitable tolling issues often arise for prospective plaintiffs, courts frequently permit notice to be keyed to the three-year period prior to the filing of the complaint[.]"  *Hamadou v. Hess Corp.*, 915 F. Supp. 2d 651, 668 (S.D.N.Y. 2013) (internal quotation marks and citation omitted).  Where, as here, Plaintiff has alleged that equitable tolling applies (*see* Compl. ¶ 41), sending notice keyed to this period is "appropriate . . ., with the understanding that challenges to the timeliness of individual plaintiffs' actions will be entertained at a later date."  *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 451 (S.D.N.Y. 2011) (citation omitted).

they are required to show that they are subject to the same common policy or plan by defendants."); *Hernandez*, 2012 WL 4369746, at *6 (conditional certification of "employees with a broad range of supermarket duties" appropriate where "all subject to the same FLSA wage violations"). "In making this showing, '[c]onclusory allegations are not enough.'" *Morales*, 2006 WL 278154, at *2-3 (alteration in original; citation omitted); *see also Sanchez v. JMP Ventures*, 2014 WL 465542, at *1.

Plaintiff offers no information that could possibly be deemed adequate to show that the second group of deliverymen were, with him, subjected to a common, unlawful compensation policy. Rather, all Plaintiff offers is a single sentence in his affidavit, stating that these deliverymen "were paid approximately $5.65 per hour and rarely, if ever, worked above forty hours per week." (Zeledon Aff. ¶ 10.) This is plainly insufficient. Even apart from the fact that Plaintiff has openly conceded that, unlike him, these employees did not work overtime, he describes them as hourly employees, whereas he claims to have been improperly paid on a salary basis. This Court also notes that Defendants appear to take the position that, to the extent they paid any hourly workers less than the regular minimum wage, they were entitled to do so, based on a legally permissible "tip credit." (Def. Mem., at 9.) While this Court neither accepts nor rejects Defendants' assertion, *see Summa*, 715 F. Supp. 2d at 385 (noting that, on a certification motion, the Court does not "decide substantive issues going to the ultimate merits" (internal quotation marks and citation omitted)), this Court does note that, in order to include this group of deliverymen in the collective, Plaintiff must at least make the required "modest factual showing sufficient to demonstrate" that, together with Plaintiff, they were "victims of a *common* policy or plan that violated the law," *Hoffman*, 982 F. Supp. at 261 (citations omitted; emphasis added). This, Plaintiff has not done.

As for the cooks, Plaintiff's affidavit lists his understandings of a number of these workers' estimated hours and approximate weekly pay, but he does not provide any information as to whether they were paid hourly, or on a salaried basis. Further, while Plaintiff purports to have "shared similar schedules" with the identified cooks, such that he was aware of their hours, he actually describes them as having had significantly varied schedules, with start times supposedly ranging from 5:00 a.m. to 12:00 noon, and end times supposedly ranging from 2:00 p.m. to 10:00 pm. (*See* Zeledon Aff. ¶ 11; *see also* Background, *supra*, at Section A(3)(b).) In this light, Plaintiff's allegation of a sharing a "similar" schedule is too vague to be meaningful. Finally, this Court notes that, based on its own computations of the cooks' hourly and overtime pay rates, based on the "approximate" information that Plaintiff has provided, it is not self-evident that these individuals were paid unlawfully. Taken as a whole, this Court finds that Plaintiff's allegations that these cooks were similarly situated to him, and that they were the victims of a common policy that violated the FLSA, are too conclusory to satisfy Plaintiff's burden – even if light – to show that these workers should be included in the collective. *See, e.g.*, *Mata*, 2015 WL 3457293, at *3 ("[W]hile his declaration lists the names and titles of seventeen coworkers . . . [plaintiff] includes no concrete facts evidencing a common scheme or plan of wage and hour violations for employees engaged in different job functions." (citations omitted)); *Sanchez v. JMP Ventures,* 2014 WL 465542, at *1 (finding conclusory assertions insufficient to support conditional certification).

Plaintiff provides even fewer details regarding the waitstaff. In fact, the only information provided regarding the waiters' and waitresses' wages and hours – that they generally worked under 40 hours per week (Zeledon Aff. ¶ 12) – cuts against conditional certification of a collective including them. As for the cashier, Plaintiff offers absolutely nothing; his affidavit

merely states that there *was* a cashier at the Amsterdam Avenue location. (*Id.* ¶ 13.) Overall, Plaintiff's allegations about these employees cannot suffice to satisfy his burden on this motion. *See, e.g., Colon v. Major Perry St. Corp.*, No. 12cv3788 (JPO), 2013 WL 3328223, at *7 (S.D.N.Y. July 2, 2013) (certifying a collective action of superintendents, but not handymen, where plaintiff's "affidavit offer[ed] only a brief sketch" regarding handymen and there was "no basis for concluding that these two groups were subject to the same policy").

Accordingly, to the extent Plaintiff's motion for conditional certification seeks to define the FLSA collective as including these additional categories of employees, the motion is denied.[9]

---

[9] Plaintiff attempts to rely on one paragraph in Defendants' Answer to demonstrate an "admitted" common policy of paying workers less than the required minimum wage. (*See* Pl. Reply Mem., at 7 (citing Answer ¶ 36 (admitting FLSA violation)).) As noted above, however (*see* Background *supra*, at Section A(4)), Defendants' Answer is inconsistent in this regard, and based on their opposition to Plaintiff's motion, it appears that Defendants wish to contest Plaintiff's allegations of any commonly applied, unlawful compensation policies. Under the circumstances, this Court will not approve conditional certification of the broad collective sought by Plaintiff, based merely on the single, cited paragraph of Defendants' Answer. *Cf. Ikikhueme v. CulinArt, Inc.*, No. 13cv293 (JMF), 2013 WL 2395020, at *2 (S.D.N.Y. June 3, 2013) ("Plaintiff's claim that Defendants have admitted that Sous Chefs are misclassified as exempt is disingenuous as Defendants have specifically argued that [they] were properly classified.").

## CONCLUSION

For all of the foregoing reasons, Plaintiff's motion for conditional certification of the collective and Court-authorized notice (Dkt. 27) is granted in part and denied in part. Within two weeks of the date hereof, the parties are directed to submit a jointly proposed form of notice to members of the collective, consistent with this Memorandum and Order.[10]

Dated: New York, New York
       October 13, 2016

SO ORDERED

DEBRA FREEMAN
United States Magistrate Judge

Copies to:

All Counsel (via ECF)

---

[10] Although Plaintiff previously submitted to this Court a "courtesy copy" of a proposed form of notice, no such proposal has been docketed, and the previously submitted notice would, in any event, need to be modified in accordance with the rulings herein. The parties are directed to consult in good faith regarding any such modifications.